Good morning, Your Honors. May it please the Court, my name is Herbert Neerman. I represent Nadia Abu-Assal and Latfi Abu-Assal. My comments will be very brief this morning. This is a single-issue appeal as to the applicability of a statute of limitations under the Uniform Fraudulent Transfer Act. And I'd like to sharpen my statement of the issue to confine it to the facts of this case. And the argument that we are making here is that an appeal filed by a judgment debtor from a judgment based on a prior obligation does not toll the statute of limitations under the Uniform Fraudulent Transfer Act. The argument, the first argument under that issue is the statute itself. And without rehashing the various provisions, the outlying statute is 7 years or 4 years plus 1 after discovery. In this case, Nadia Abu-Assal entered into a real estate transaction, had a promissory note, which was reduced to a judgment in 1993, in December. About a week before that judgment was entered, or a little earlier, she made three conveyances, which later were attacked as fraudulent. She took an appeal from the motion for summary judgment, which was not finalized until November 30th of 1998. Four years thereafter That was during the time of the appeal. Yes. And Is your main point that you don't think this Cortez principle that you have to wait that everything is told until you get the final answer, you don't think that applies in a contract or fraudulent transfer case? I don't think it applies. I don't think contract or tort has anything to do with it. I think it has to do with whether or not the underlying claim is an obligation. I mean, in 1993, the creditor could have levied on this obligation. But you're so you're you think the obligation being established is simply in more in the need to be a court judgment. That is exactly right. What do you think, an interesting argument, but I wasn't sure what the support for that proposition is. Well, to take a look at the Cortez case, the Cortez case says that there is a final judgment that establishes, quote, an actual legal existence of a debtor-creditor relationship. Absent a court judgment, Cortez seems to be saying that in the ordinary transactional business, there's not a debtor-creditor relationship. If that's the case, then every time I make a credit card charge and it's not reduced to a judgment, there's not a debtor-creditor relationship and no obligation is arises thereby. For me, that's that would be nonsense. My credit card company would agree likewise. In the Cortez case, there was not a prior creditor-debtor relationship until in that case, which was a tort case, but as far as I'm concerned, the tort is immaterial. There was not a legally established existence of a debtor-creditor relationship. In our case, we're arguing there was one, even in 1992 when Nadia Assal signed the deeds of trust and the obligations to La Sierra. What do you do about the California case of Adams v. Bell, which basically runs the contract in a contract case for getting the tort situation from the debting? I'm sorry I stepped on your lines. But we're going the same place. Good, Judge McCone. Thank you for raising that argument. I was astounded by that interpretation in the back ruling, and I went back to the Adams case. It's not a contract case. It is a case which simply rests on a judgment, which was entered against the judgment debtor. And the judgment debtor transferred real property to her son, and the action ensued to set aside that transfer. So that case was not based on tort or contract. In fact, from the record, you can't tell what it is. At the very end of that case, the California Supreme Court says, quote, appellants did not set up the statute of limitations by their answer, nor was it made an issue on the trial. No evidence was received on the subject, nor is it a matter mentioned in the findings. Hence, in such a state of the record, the subject will not be considered on the appeal. The statute of limitations was not addressed in the Adams case. And I think that the Adams case rationale is oblique to the holding in Cortez. So do you have any support from any other comparable uniform transfer states or anything else that says you don't have to wait till a judgment? You've got to go at some time before that if you think you have a sufficient relationship. Well, in this case, that wouldn't necessarily apply because there was one. There was a summary judgment in 1993. The only thing is under California law, that judgment was not final until 1998 when the remittiture was decided against my client. What was the defense? There was an appeal taken to the underlying claim, which was, I don't remember what it was, but the underlying complaint contention that established the debt in a judgment by the summary judgment. But there must have been some defense because it went up an appeal. Do you know what it was? We don't have it on the record. I don't have that in my memory either, except only vaguely. And at one point, I was present when that was discussed with the trustee in a bankruptcy, and they were arguing over offsets under a settlement in a settlement conference. So other than that, I have no idea what that was about. But back to my other question, which I don't think you've answered, what is the support for your position? Clear logic, Your Honor, and the straight statement of the statutory provisions under the Uniform Transfer Act, as it's stated in California law. Kind of reminds me of my supervising partner. The first year I practiced law, you know, I'd come back and I'd say, I can't find anything. He'd say, try common sense. So I guess that's your argument as well. Thank you. Yes, it is. Thank you, Your Honors. Good morning. Steve Johnson for Mr. Nasheed, appellee. This is kind of an interesting issue, but I think the Cortez case has resolved it. And it was discussed in the Macedo case, the California appellate case, which addressed this issue of contract versus tort. And so I think California has resolved that issue. Is Macedo in your brief? Yes, it is, Your Honor. Macedo versus Paseo. And it has quite a discussion of the Cortez rationales and their conclusion that applied to contract and tort. And, you know, if you think of it logically, why would you distinguish tort and contract? And like counsel was arguing, one of these cases, you don't know where it lies in between. And tort cases can be your, say, your victories can be almost assured. You know, say in a tort case, if somebody came in and chopped me up and killed my wife and kids in front of me just to inflict emotional distress, I'd have a pretty strong claim for compensation. Whereas in contract cases, you can have all the defenses, as Your Honor pointed out. And the rationale for this, for saying that you should not have to file a fraudulent conveyance act until your judgment becomes final makes a lot of sense, because as the Court discussed in some of the old California cases, you're going to have a whole lot of litigation, a whole lot of damage inflicted if you require a fraudulent conveyance act before your judgment becomes final. Although you can do that, but you take the risk. And I think the, what I would argue about Cortez is they have not applied the direct language of four years or one year or up to seven years. I think you can apply the seven year. But what they've said is it's cumulative. The remedies are cumulative to the remedies available before the fraudulent conveyance acts. And I think it boils down to that. Cortez is good California law. Let me ask a different question. This has to do with Lofty. You have to be under the Transfer Act, you have to be a transfer by the debtor of property. How is it that Lofty is a debtor? It seems like Lofty is not a debtor. Lofty is brought in as a co-conspirator. But that seems to me to be a different issue. I mean, that seems to me to be different than the fraudulent transfer claim. That seems to be a conspiracy of transfer as opposed to an actual fraudulent transfer. Well, as you know, conspiracy has to be based on an underlying tort. And I pointed out in my brief that there is case law saying that a conspiracy to commit a fraudulent conveyance, really your statute runs from the last overt act, and we've alleged acts up until, well, if I admitted the complaint, up until a few months ago, actually. But that's how Lofty got into a conspiracy to commit the tort of fraudulent conveyance. Okay, so the only, just to be clear then, the only claim you have against Lofty, in your view, is a conspiracy for fraudulent transfer. That's correct, because his wife's name was on the original properties that got transferred. But we have alleged in our complaint, the second amended complaint in the bankruptcy court now, that he and these other entities are conspirators in all these transfers. Basically, Lofty is the main conspirator. That's what we allege. Masterminded all of the transfers, actually. Yeah, I have nothing further in this course. Thank you very much. All right. All right. The court will revert all the cases, but instead of the argument calendar, we have two submitted cases. And this court will adjourn. All rise. This court for this session stands adjourned.
judges: Bright, Pregerson, McKeown